UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRIS SCHUTT,<br><br>       Plaintiff,<br>  v.<br><br>LUKE GARDNER, LUKE GARDNER, LLC and F/V QUANTUM LEAP,<br><br>       Defendants. | CASE NO. 18-5832 RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment (Dkt. 16) and the Defendants' Cross Motion for Summary Judgment (Dkt. 20). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

This case arises from the Defendants alleged failure to pay the Plaintiff full wages from a 2015 fishing season. Dkt. 1. It is undisputed that the Court has jurisdiction over the parties under maritime law. 28 U.S.C. § 1333. The parties now file cross motions for summary judgment. Dkts. 16 and 20. For the reasons provided, the Plaintiff's motion (Dkt. 16) should be granted, and the Defendants' motion (Dkt. 20) should be granted, in part, and denied, in part.

**I.  RELEVANT FACTS AND PROCEDURAL HISTORY**

**A. FACTS**

According to the Plaintiff, he was hired in the spring of 2012 to work as a deckhand aboard the F/V QUANTUM LEAP during the summer 2012 Alaska salmon fishing season. Dkt. 18, at 1. The Plaintiff negotiated and agreed to the terms of his employment orally on the phone and by text while the Plaintiff was in California and Defendant Luke Gardner, the owner and master of the F/V QUANTUM LEAP, and one of two principals in Luke Gardner, LLC (a Washington company), was in the state of Washington. Dkt. 22. Plaintiff returned to work for Gardner for the 2013, 2014 and 2015 salmon seasons. Dkt. 18. For the 2015 season, the Plaintiff states that they again negotiated their agreement while the Plaintiff was in California and Gardner was in Washington, and that the Plaintiff "agreed to work for defendants as a deckhand aboard the F/V QUANTUM LEAP during the salmon season in exchange for a 9% crew share." Dkt. 18, at 2. The Plaintiff maintains that he "interpreted [their] agreement to mean that [he] was to be paid 9% of the net proceeds from all fish caught during the 2015 salmon season, due within a reasonable time after receipt by Mr. Gardner." *Id.*

The F/V QUANTUM LEAP is a Coast Guard documented vessel that is registered in the State of Alaska and has never been used for commercial fishing in any state but Alaska. Dkt. 22, at 3. At the time of this dispute, she was 18 gross tons (Dkt. 22, at 21), and was fishing in the Egegik district of Bristol Bay, Alaska (Dkt. 22, at 4).

According to Defendant Gardner, crew members are customarily "paid on percentage shares of vessel production." Dkt. 22, at 5. He explains that "[t]he processing plants (Icicle Seafoods for example) pay whatever they want whenever they want in lieu of their obligations to the vessels. . . It is common to have a price on the ticket while the fish are caught and sold then late

in the season – or after, the processors will make an additional payment to the vessels, called a 'retro' payment." *Id.,* at 8.

According to Gardner, the terms of the oral employment contracts with crew members, including the one he had with the Plaintiff for the 2015 season are as follows:

> Earnings – you are working for 'x' percentage of gross fish sales less fish taxes and minus agreed upon deductions. Fish sales or prince increases after you have left the work of the vessel are not to be considered in earnings. General maintenance = the total sum of food, laundry and other General Maintenance to be split equally amongst crew and skipper on an even per day pro rate split. You are responsible for your own travel arrangements to and from Egegik . . . [Gardner] pay[s] for crew licenses at the end of the season as a bonus. Completing the season – season is completed when the boat and gear are winterized and stowed in Egegik to [Gardner's] satisfaction.

Dkt. 22, at 6-7. Gardner states that "[i]t is customary that vessels make lay share payments to crewmen shortly after the first payments from the processors in the fall." Dkt. 22, at 9. He maintains that it is "much more variable when and under what conditions" payment to a crewman is made from the processors' spring payments. Dkt. 22, at 10. According to Gardner, he "conditions the payment on the crewman returning for the following season – in other words a 'return bonus.'" Dkt. 22, at 10. Gardner asserts that this was his agreement with the Plaintiff over the 2015 season – the Plaintiff had to return for the 2016 season to receive that last portion of the retroactive 2015 pay, consistent with prior years. Dkt. 22, at 10-14.

The Plaintiff states that while in Alaska, he received a "$9,000 advance from Icicle Seafoods on Mr. Gardner's account." Dkt. 18, at 2. (Gardner states that he is in the top 5 producers for Icicle Seafoods out of around 250 vessels. Dkt. 22, at 5.) The Plaintiff asserts that Icicle Seafoods stopped accepting fish in early August of 2015, and the remaining fish were sold to Ocean Beauty and Trident Seafoods. Dkt. 18, at 3. The Plaintiff indicates that he received two additional checks from Defendant "Luke J. Gardner, LLC" issued from Washington for the 2015

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 3

salmon season: one dated August 20, 2015 for $4,615.57 for "crew pay," and another dated November 10, 2015 for $752.29 for "Ocean Beauty & Trident Ice 2015" from the same account. Dkt. 18, at 2, 6 and 7. The Plaintiff states that he "expected that in the spring of 2016, he would be paid retro related to the 2015 Alaska salmon season." Dkt. 18, at 3.

The Plaintiff states that on March 25, 2016, Mr. Gardner emailed him that: "Trident kicked down a dime, and I expect nothing less, when you show up to continue you[r] employment that will be worth about 2000 to 2700, depending on how the chips fall with the late non icicle fish." Dkt. 18, at 3 and 9.

In the spring of 2016, the Plaintiff and Mr. Gardner began negotiating the Plaintiff's possible employment for the 2016 salmon season. Dkt. 18, at 3. The parties struggled to come to terms. *Id.* Mr. Gardner made the Plaintiff an offer and around two weeks before the 2016 season was about to begin, the Plaintiff informed Mr. Gardner that he was not going to accept the position. Dkt. 22, at 17. The Plaintiff did not receive any further payment from Defendants related to the 2015 Alaska salmon season.

**B. PROCEDURAL HISTORY AND PENDING MOTIONS**

On October 11, 2018, the Plaintiff filed this case, asserting claims under 46 U.S.C. §§ 10601 and 10602 for failure to have a written fishing agreement. Dkt. 1. The Plaintiff also makes a breach of contract claim and asserts that he is "entitled to remedies provided by federal and/or state law." *Id.* In the relief portion of his Complaint, he seeks earned wages, "double wage penalties," costs and attorney's fees. *Id.*

On December 20, 2018, the Plaintiff filed his motion for summary judgment. Dkt. 16. He moves the Court for an order holding that he "is entitled to bring claims under Washington law

related to defendants' nonpayment of wages." *Id*. The Plaintiff also moves for summary judgment of dismissal on the Defendants' statute of limitations/laches defense. *Id.*

The Defendants oppose the motion. Dkt. 21. They argue that federal admiralty law applies, and if admiralty incorporates state law, then the incorporation of Alaska law, as opposed to Washington state law, is proper. *Id.* The Defendants maintain that fisherman are exempt from Alaska's Wage and Hour Act. *Id.* They assert that the statute of limitations for wage claims under Alaska law is two years, calculated from the time of his termination, which was August 4th or 5th of 2015; they maintain that his October 11, 2018 case was filed too late. *Id*. (*citing* AS 23.10.130 and *Reed v. Municipality of Anchorage,* 741 P.2d 1181 (Alaska 1987)).

In their response, the Defendants also move to strike paragraph four of the Plaintiff's declaration (Dkt. 18, at 2) regarding whether Gardner has failed to pay other crew members. Dkt. 21.

The Plaintiff replies and argues federal maritime law and Washington State law apply. Dkt. 26. He asserts that under federal maritime law, Washington law, and Alaska law, the statute of limitations for a breach of contract action is three years, so under any of the possible laws, the claim for the statute of limitations defense should be dismissed. *Id.* He asserts Alaska law doesn't conflict with Washington law: it provides remedies (from which fishermen are not precluded) under AS 23.05.140(d) for the non-payment of wages after termination and under the Alaska R. Civ. P. 82, the Plaintiff, if he prevails would be entitled to attorneys' fees. *Id.* The Plaintiff states that he is not making a claim under Alaska's Wage and Hour Act. *Id.*

The Defendants move for summary judgment, arguing that there are no issues of fact and they are entitled to a judgment as a matter of law because the Plaintiff did not say he had an agreement to receive "retro" pay, only that he interpreted the agreement that way. Dkt. 20. They

maintain that the Plaintiff's interpretation of the agreement is insufficient evidence that there was an agreement. *Id.* They further note that because the vessel is under 20 gross tons, 46 U.S.C. §§ 10601 and 10602 do not apply, so these claims should be dismissed. *Id.*

The Plaintiff responds and argues that there are issues of fact as to whether the parties' oral contract included retro pay. Dkt. 28. The Plaintiff now acknowledges that due to the size of the F/V QUANTUM LEAP (less than 20 gross tons), 46 U.S.C. §§ 10601 and 10602 do not apply. Dkt. 28, at 2, n.1. In light of this acknowledgement, the Defendants' motion for summary judgment as to the claims under 46 U.S.C. §§ 10601 and 10602 should be granted (Dkt. 20) and those claims dismissed without further analysis.

The Defendants reply and repeat their prior assertions that there are no issues of fact and they are entitled to a judgment. Dkt. 29. They point to a declaration by another party who states that the Plaintiff knew that the retro pay was intended as a signing bonus for the following year. *Id.*

Trial is set to begin on November 12, 2019, the discovery deadline is July 15, 2019 and dispositive motions are due by August 13, 2019. Dkt. 31.

**C. ORGANIZATION OF OPINION**

This opinion will first address the motion to strike, then provide the summary judgment standard, next address the applicable law, and then consider the Plaintiff's motion for summary judgment of the Defendants' defenses of the statute of limitations and laches, and the Defendants' motion for summary judgment on the Plaintiffs' claim for breach of contract.

**II. DISCUSSION**

**A. MOTION TO STRIKE**

1 | For the purposes of this motion alone, the Defendants' motion to strike (Dkt. 21) should be
2 | granted. The allegations in paragraph four of the Plaintiff's declaration (Dkt. 18 at 2) are not
3 | relevant to the issues raised in these motions.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### C. APPLICABLE LAW

The Defendants move for summary judgment on all the Plaintiff's claims. Dkt. 20. They argue that federal maritime law preempts state law, and if state law does apply, Alaska law, not Washington law, applies. *Id.*

"The general rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1178 (9th Cir. 2011).

The Plaintiff's Complaint states that he makes a breach of contract claim and is entitled to remedies under both federal and state law. The Plaintiff's Complaint does not specifically identify under which state law he makes his claim. In the pleadings filed related to both these motions, the Plaintiff refers to Washington state laws RCW 49.52.070 (provides for twice the amount of wages unlawfully withheld and for attorneys' fees) and RCW 49.48.030 (provides for recovery of attorneys' fees if a person is successful in recovering judgment for wages or salary owed).

The Washington state statutes that the Plaintiff relies on here, RCW 49.52.070 and RCW 49.48.030 are not preempted by federal maritime law and are available to supplement it. There is no showing that these Washington statutes are not "matters of local concern." There is no

showing that they "actually conflict with federal law or interfere with the uniform working of the maritime legal system." Accordingly, to the extent that the Plaintiff makes claims under Washington state laws RCW 49.52.070 and RCW 49.48.030, they are available to supplement federal maritime law.

The Defendants maintain that Alaska law, not Washington law, should be used to supplement federal maritime law here. Dkt. 20. The Defendants cite to *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 916 (9th Cir. 2003). *Flores* is of limited application here. In *Flores,* the parties had a written agreement with a choice of law clause that the agreement was governed by **federal maritime law**. This agreement had no choice of law clause. *Flores* does provide the general rule regarding choice-of-law determinations in admiralty cases, however. "Federal common law applies to choice-of-law determinations in cases based on ... admiralty.... Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Flores,* at 916. Assuming, without finding that there is a conflict between Washington and Alaska law presented here, Washington State also applies the Restatement (Second) of Conflicts of Laws; specifically the "most significant relationship test . . . in the Restatement (Second) Conflict of Laws . . . when resolving contractual choice-of-law problems in which the parties did not make an express choice of law." *Erwin v. Cotter Health Centers*, 161 Wn.2d 676, 693, 167 P.3d 1112, 1120–21 (2007).

Under § 186 of the Restatement (Second) Conflict of Laws, "[i]ssues in contract are determined by the law chosen by the parties in accordance with the rule of § 187 and otherwise by the law selected in accordance with the rule of § 188." The parties did not include a choice of law provision in their oral contract, so § 188 applies. Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties . . .
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account . . . to determine the law applicable to an issue include:
    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract, and
    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188 (1971).

Consideration of the factors under § 188 leads to the conclusion that Washington law applies. Washington state has the most significant relationship to the transaction at issue under §188(1). While the Plaintiff performed his part of the bargain in the State of Alaska, the Defendants performed (or are alleged to have failed to perform) a majority of their part of the bargain (paying the Plaintiff for his services) while in Washington State.

Moreover, "the contacts to be taken into account" to determine the law applicable favor finding that Washington law applies under §188(2). The place of contracting, negotiating and agreeing on the contract is of neutral value or slightly favors Washington State. The parties contracted, negotiated and agreed on the contract while the Defendants were in Washington and the Plaintiff was in California. These factors slightly favor Washington law, but do not favor application of Alaska law at all.

The place of performance of the contract favors application of Washington law. While the Plaintiff performed in Alaska, the Defendants performed (or failed to perform) while they were in Washington when they did not send the spring payment the Plaintiff asserts that he is due. "The state where performance is to occur has an obvious interest in the question whether

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 10

this performance would be illegal." Restatement (Second) of Conflict of Laws § 188 (1971), Comment e. "It is clear that the local law of the place of performance will be applied to govern all questions relating to details of performance." *Id.* This factor strongly favors application of Washington law.

The "subject matter of the contract" favors application of Alaska law. The "subject matter of the contract" was Plaintiff's provision of his services to catch Alaska fish and the Defendants' agreement to pay him for it. This factor favors Alaska law.

The last few factors under §6 and §188(2)(e), "the domicil, residence, nationality, place of incorporation and place of business of the parties" favors application of Washington law. The Defendants are domiciled, reside, and conduct business in Washington. The business entity is a Washington entity. "The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance," such as is the case here. Restatement (Second) of Conflict of Laws § 188 (1971), Comment e. The Defendants negotiated and agreed on the contract, and then allegedly failed to perform under the contract all within the State of Washington. This factor also favors application of Washington law.

On balance, the state with the most significant contacts to this dispute is Washington, rather than Alaska. The Defendants' alleged breach (failure to pay the spring retro payment) occurred in the state of Washington. The parties' expectations are best protected under Washington law. *See Jorgensen v. Cassiday*, 320 F.3d 906, 914 (9th Cir. 2003).

Federal maritime applies and can be supplemented by Washington law. Accordingly, to the extent that the Defendants seek summary judgment on the Plaintiffs' claims under Washington law, by asserting that Washington law does not apply (Dkt. 20), the motion should

be denied.  To the extent that the Plaintiff seeks summary judgement that Washington law applies (Dkt. 16), the motion should be granted.

### D. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DEFENDANTS' DEFENSE OF STATUTE OF LIMITATIONS AND LACHES

The Defendants cite Alaska's two year statute of limitations in arguing that claims under Alaska wage laws should be dismissed.  Dkt. 21.  Not only has the Plaintiff stated that he is not making claims under Alaska law, as above, Alaska law does not apply.  To the extent the statute of limitations defense is based on Alaska law, it should be dismissed.

Further, to the extent the statute of limitations defense is based on Washington law, the claim should be dismissed.  Under Washington law, a claim for breach of an oral contract must be brought within three years.  RCW 4.16.080(3).  If the Defendants base their statute of limitations on another Washington statute, they failed to identify it.  They have failed to carry their burden and this defense should be dismissed to the extent it is based on Washington law.  The motion for summary judgment on the statute of limitations defense (Dkt. 16) should be granted.

Moreover, the Plaintiff's motion for summary judgment on the laches claim (Dkt. 16) should be granted.  "Laches is an equitable affirmative defense available for actions that do not have a specific applicable statute of limitations." *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1125 (9th Cir. 2006)(*internal citations omitted*).  "The affirmative defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.,* at 1126.

The Defendants' claim for laches should be dismissed.  They have failed to show a lack of diligence on the Plaintiffs part.  The Defendants are alleged to have breached the contract in the spring of 2016 when they failed to pay the Plaintiff his last payment for the 2015 Salmon season.  He filed this case in October of 2017, within three years of the alleged breach. The

Defendants point to no evidence that they are prejudiced as a result of the time it took the Plaintiff to file the case. The Plaintiff's motion for summary judgment on the defense of laches should be granted (Dkt. 16) and the defense dismissed.

### E. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM

The Defendants move for summary judgment on the Plaintiff's breach of contract claim, asserting that there are no issues of fact as to whether the Defendants' breached their agreement. Dkt. 20.

The Defendants' motion for summary judgment on the contract claim (Dkt. 20) should be denied. There are issues of fact as to whether the Defendants breached their agreement with the Plaintiff. The Defendants contend that the spring retro money was intended as a bonus for agreeing to work the following season. The Plaintiff maintains that the spring retro money was due to him as final payment on their agreement that he receive 9% of the fish sales. He states that he "agreed to work for defendants as a deckhand aboard the F/V QUANTUM LEAP during the salmon season in exchange for a 9% crew share." Dkt. 18, at 2. The Plaintiff maintains that he "interpreted [their] agreement to mean that [he] was to be paid 9% of the net proceeds from all fish caught during the 2015 salmon season, due within a reasonable time after receipt by Mr. Gardner." *Id.* While the Defendants assert that the Plaintiff's "interpretation" is unimportant, they fail to make a sufficient showing that this justifies dismissal of the claim. An issue of fact regarding the interpretation of the agreement remains. The Defendants' motion for summary judgment (Dkt. 20) on the contract claim should be denied.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- The Defendants' motion to strike (Dkt. 21) **IS GRANTED**;

- The Plaintiff's Motion for Summary Judgment (Dkt. 16) **IS GRANTED as follows**:
    - Washington law applies to Plaintiff's state law claims, which supplement federal maritime law,
    - The Defendants' laches and the statute of limitations defenses **ARE DISMISSED**; and
- The Defendants' Cross Motion for Summary Judgment (Dkt. 20) IS:
    - **GRANTED** as to the Plaintiff's claims under 46 U.S.C. §§ 10601 and 10602, and
    - **DENIED** in all other respects.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 5th day of February, 2019.

*Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge